# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMERICAN PLATINUM PROPERTY AND CASUALTY INSURANCE COMPANY,** as Subrogee of DOLLY MARSHALL and DOLLY MARSHALL,<br>            **Plaintiffs** | : NO.: | 2:20-cv-237 |
| **v.** | : | |
| **HP, INC.; HEWLETT PACKARD ENTERPRISE COMPANY and AMAZON.COM, INC.,**<br>         **Defendants** | : **JURY TRIAL DEMANDED** | |

## <u>*COMPLAINT*</u>

Plaintiffs, American Platinum Property and Casualty Insurance Company, as Subrogee of  Dolly Marshall, by and through counsel, Cohen, Feeley, Altemose & Rambo, P.C., and Dolly Marshall, bring this Complaint against HP, Inc..; Hewlett Packard Enterprise Company and Amazon.com, Inc., and in support hereof, avers as follows:

## PARTIES

1.  Plaintiff, American Platinum Property and Casualty Insurance Company ("American Platinum"), is a corporation and citizen of the State of Florida, having its principal office and place of business located at 1110 W. Commercial Boulevard, Fort Lauderdale, FL  33309.

2.  At all times relevant hereto, Plaintiff, American Platinum, acted by itself and by and through its agents, servants, workmen and/or employees, acting within the course

and scope of their agency and employment and in furtherance of Plaintiff, American Platinum's business interests.

3.   Plaintiff, Dolly Marshall, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing in the Commonwealth of Pennsylvania at 905 W. Washington Avenue, Du Bois, PA  15801.

4.   Defendant, HP, Inc. ("HP") is either a corporation, partnership, limited partnership, incorporated association, unincorporated association, limited liability corporation, limited liability partnership or other business entity that it is a citizen of the State of California where it maintains its nerve center and corporate headquarters at 1501 Page Mill Road, Palo Alto, CA  94304.

5.   At all times relevant hereto, Defendant, HP, has regularly conducted business throughout the Commonwealth of Pennsylvania.

6.   Defendant, Hewlett Packard Enterprise Company ("Hewlett Packard Enterprise"), is either a corporation, partnership, limited partnership, incorporated association, unincorporated association, limited liability corporation, limited liability partnership or other business entity that it is a citizen of the State of California where it maintains its nerve center and corporate headquarters at 6280 America Center Drive, San Jose, CA  95002.

7.   At all times relevant hereto, Defendant, Hewlett Packard Enterprise, has regularly conducted business throughout the Commonwealth of Pennsylvania.

8.   Defendant, Amazon.com ("Amazon"), is either a corporation, partnership, limited partnership, incorporated association, unincorporated association, limited liability

2

corporation, limited liability partnership or other business entity that it is a citizen of the State of Washington where it maintains its nerve center and corporate headquarters at 410 Terry Avenue North, Seattle, WA 98109.

9. At all times relevant hereto, Defendant, Amazon, has regularly conducted business throughout the Commonwealth of Pennsylvania.

10. At all times relevant hereto, all Defendants acted individually and by and through their agents, servants, workmen and/or employees, acting within the course and scope of their employment and in furtherance of Defendants' business interests.

## JURISDICTION AND VENUE

11. This Court has diversity jurisdiction under Section 1332(a)(1) of Title 28 of the United States Code, 28 U.S.C. Section 1332(a)(1) and (a)(2).

12. This Court has venue over this action pursuant to 28 U.S.C. Section 1391(b)(2).

## FACTS

13. At all times relevant hereto, Plaintiff, Dolly Marshall, has been the owner of single family residence dwelling (the "residence") located at 905 W. Washington Avenue, Du Bois, PA 15801.

14. In or about the year 2010, Plaintiff, Dolly Marshall, purchased a new HP Compaq laptop computer (the "subject laptop computer") for her personal use.

15. At all times relevant hereto, Defendants, HP and Hewlett Packard Enterprise, were engaged in the business of designing, fabricating, manufacturing, marketing, advertising, constructing, distributing, supplying, and/or selling laptop computers,

3

including the subject model laptop computer, throughout the United States, including the Commonwealth of Pennsylvania.

16.   Defendants, HP and Hewlett Packard Enterprise, designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied and/or sold the subject laptop computer to Plaintiff, Dolly Marshall, who purchased it, upon information and belief, at Sears or Staples store, in or near Dubois, Pennsylvania.

17.   At all times relevant hereto, Defendants, HP and Hewlett Packard Enterprise, intended that, or reasonably foresaw that the subject laptop computer would be purchased by a user in the Commonwealth of Pennsylvania.

18.   At all times relevant hereto, Defendants, HP and Hewlett Packard Enterprises, were engaged in the business of designing, fabricating, manufacturing, marketing, advertising, constructing, distributing, supplying, and/or selling replacement batteries for the subject model laptop computer, including the HP Compaq 593553-001 replacement battery (the "subject model replacement battery" or a "product"), throughout the United States, including the Commonwealth of Pennsylvania.

19.   At all times relevant hereto, Defendant, Amazon, was engaged in the business of marketing, advertising, distributing, supplying, and/or selling replacement batteries for the subject model laptop computer, including the subject model replacement battery, throughout the United States, including but not limited to the Commonwealth of Pennsylvania.

20.   At all times relevant hereto, all Defendants marketed, advertised and instructed purchasers of the subject model laptop computer, including Plaintiff, Dolly Marshall, that said subject model replacement battery was compatible with, and intended

4

to be used as a replacement battery for the subject model laptop computer and would safe for use in the subject model laptop computer.

21.  On or about August 18, 2016, Plaintiff, Dolly Marshall, purchased an Hp Compaq 593553-001 replacement battery for the subject laptop computer (the "subject replacement battery" or a "product") from Defendant, Amazon, via Defendant's website.

22.  Defendant, Amazon, advertised, distributed, marketed, supplied, and/or sold the subject replacement battery to Plaintiff, Dolly Marshall, or to another party in the chain of distribution of the subject replacement battery that was purchased by Plaintiff, Dolly Marshall.

23.  Defendants, HP and Hewlett Packard Enterprise, designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied and/or sold the subject replacement battery to a party in the chain of distribution of the subject replacement battery that was purchased by Plaintiff, Dolly Marshall.

24.  At all times relevant hereto, all Defendants intended that, or reasonably foresaw that the subject replacement battery would be purchased by a user in the Commonwealth of Pennsylvania.

25.   In or about 2016, Plaintiff, Dolly Marshall, installed the subject replacement battery into the subject laptop computer.

26.  The subject laptop computer and/or the subject replacement battery (collectively referred to as the "products" or the "subject products"), as designed, manufactured, distributed, marketed, advertised, supplied and/or sold by Defendants with design and/or manufacturing defects, including but not limited to defects in the charging circuit, battery cell construction, the purity of the battery that cause excessive heat,

sparking, lithium crystallization, lithium instability, and fires during the intended or reasonably foreseeable uses of the products during the intended and expected useful life of the products; defects in systems that were designed and manufactured into the products to prevent excessive heat, sparking lithium crystallization, lithium instability, and fires during the intended or reasonably foreseeable uses of the products during the intended and expected useful life of the products; and defects consisting of a lack of systems designed and manufactured into the products for the purpose of preventing excessive heat, sparking, lithium crystallization, lithium instability and fires during the intended and expected useful life of the products during the intended or reasonably foreseeable uses of the products (collectively, the "defective and unreasonably dangerous conditions in design and manufacture").

27.  At all times relevant hereto, the aforesaid defective and unreasonably dangerous conditions in design and manufacture and dangers therefrom were unknowable and unacceptable to the average or ordinary consumer using the subject products in the intended, reasonable and reasonably foreseeable uses and thus the products were designed, manufactured, distributed, marketed, advertised, and/or sold in a defective condition unreasonably dangerous to the average or ordinary consumer.

28.  At all times relevant hereto, all Defendants knew, or should have known, of the existence of the defective and unreasonably dangerous conditions in design and manufacture of the products and dangers resulting therefrom were unknowable and unacceptable to the average or ordinary consumer using the products in the intended, reasonable and reasonably foreseeable uses and thus the products were designed,

manufactured, distributed, marketed, advertised, and/or sold in a defective condition in design and manufacture unreasonably dangerous to the average or ordinary consumer.

29.   At all times relevant hereto, a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid defective and unreasonably dangerous conditions in design and manufacture of the products to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the products in their intended, reasonable and reasonably foreseeable use and their property outweighed the burden or costs of Defendants taking precautions to eliminate or substantially reduce the likelihood that said defective and unreasonably dangerous conditions in design and manufacture of the products and dangers resulting therefrom would present themselves to the intended, ordinary or reasonably foreseeable users and their property while using the products in their intended, reasonable and reasonably foreseeable uses and thus the products were designed, manufactured, distributed, marketed, advertised, and/or sold in a defective condition in design and manufacture unreasonably dangerous to the average or ordinary consumer.

30.   At all times relevant hereto, all Defendants knew, or should have known , that a reasonable person would conclude that the probability and seriousness of harm created by the defective and unreasonably dangerous conditions in design and manufacture of the products and dangers resulting therefrom to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the products in their intended, reasonable and reasonably foreseeable use and their property resulting from the defective and unreasonably dangerous conditions in design and manufacture of the products outweighed the burden or costs of Defendants taking precautions to eliminate or

substantially reduce the likelihood that said defective and unreasonably dangerous conditions and dangers resulting therefrom would present themselves to the intended, ordinary or reasonably foreseeable users and their property while using the products in their intended, reasonable and reasonably foreseeable uses and thus the products were designed, manufactured, distributed, marketed, advertised, and/or sold in a defective condition in design and manufacture unreasonably dangerous to the average or ordinary consumer.

31.   At all times relevant hereto, alternative feasible designs and manufacturing processes existed for the products that would eliminate the dangerous conditions in design and manufacture, that would prevent a fire and that would render the products safe and not defective in design and manufacture and unreasonably dangerous for their intended, reasonable and reasonably foreseeable uses by the intended, ordinary, reasonable and reasonably foreseeable user or consumer.

32.   At all times relevant hereto, all Defendants knew, or should have known, that alternative feasible designs and manufacturing processes existed for the products that would eliminate the dangerous conditions in design and manufacture, that would prevent a fire and that would render the products safe and not defective in design and manufacture and unreasonably dangerous for their intended, reasonable and reasonably foreseeable uses by the intended, ordinary, reasonable and reasonably foreseeable user or consumer.

33.   On or about August 30, 2019, a fire erupted at the residence of Plaintiff, Dolly Marshall, when the products were present within the residence, and when the subject replacement battery was installed in the subject laptop computer, causing substantial

8

damage and destruction to the structure, rendering the residence uninhabitable, the complete destruction of certain personal property contained therein and substantial damage and destruction to other personal property contained therein owned by Plaintiff, Dolly Marshall.

34.   The products were the cause and origin of the fire.

35.  At the time when the fire originated in the products, the subject laptop computer was plugged into a power outlet for the subject replacement battery to charge, but the subject laptop computer was turned off, and no one was using the subject laptop computer.

36.  The products were given only their intended, normal, anticipated, reasonable and reasonably foreseeable use by Plaintiff, Dolly Marshall, and all other users at all times relevant hereto.

37.  There were no reasonable causes of the fire originating with the products other than the unreasonably dangerous conditions in design and manufacture of the products and the dangers resulting therefrom that rendered the products defective in design and manufacture and unreasonably dangerous.

38.  The aforesaid fire occurred during the products' expected useful life or life span as intended and reasonably foreseen by Defendants and the generally accepted useful life or expected life span for the products.

39.   If the products were properly designed and manufactures, said products would never catch or cause a fire during the intended or reasonably foreseeable use of the products throughout their expected useful life or life span.

40.  The parts and systems of the products that caused the fire could function properly from the date of the first use of the products until the aforesaid date of the fire yet be defective at the time when the products left Defendants' possession or control.

41.  The defective and unreasonably dangerous conditions in design and manufacture of the products and the dangers resulting therefrom that rendered the products defective in design and manufacture and unreasonably dangerous were the direct, factual and proximate cause of the fire and the losses and damages to Plaintiff, Dolly Marshall, and Plaintiff as shall be more fully set forth at length below.

42.  On or about August 1, 2019, Plaintiff, American Platinum, issued a policy of homeowners insurance to Plaintiff, Dolly Marshall, a true and correct copy of which is attached hereto along with the Declarations Sheet as Exhibit "A", covering and insuring Plaintiff, Dolly Marshall, her residence, certain personal property contained in the residence and fixtures of the residence for certain losses and damages, with effective dates of August 1, 2019 through August 1, 2020 (the "Policy").

43.  The aforesaid Policy insured Plaintiff, Dolly Marshall, for direct physical loss and damage to the aforesaid residence caused by the aforesaid fire, and against direct physical loss and damage to certain personal property within the residence caused by the aforesaid fire, and obligated Plaintiff, American Platinum, to pay on behalf of, for, or to Plaintiff, Dolly Marshall, damages and losses she suffered or shall suffer to clean, repair, reconstruct and/or replace the residence and certain personal property and fixtures thereof damaged or destroyed by the aforesaid fire, to pay for fire suppression or fighting, to remove debris from the aforesaid fire, to secure the premises, to store property, to pay for alternative living arrangements, to pay certain ongoing expenses of the residence

when it could not be occupied, and to pay additional living expenses incurred by Plaintiff, Dolly Marshall.   A complete listing of Plaintiff, American Platinum's obligations to Plaintiff, Dolly Marshall, arising out of a fire loss is set forth in the Policy attached hereto as Exhibit "A" which is incorporated herein by reference.

44.   Pursuant to the terms of the Policy, Plaintiff, American Platinum, has paid, and may in the future pay to, for or on behalf of Plaintiff, Dolly Marshall, certain losses and damages caused to Plaintiff, Dolly Marshall, that are recoverable by Plaintiff, Dolly Marshall, against the Defendants in this action by the aforesaid fire, including payment of the following losses and damages to date:

(a).  expenses for debris removal and cleaning of the residence;

(b).  expenses for repair of the residence:

(c).  expenses for personal property replacement and cleaning and repair of damage to personal property;

(d).  expenses for alternative living arrangements for certain ongoing and additional living expenses incurred by Plaintiff, Plaintiff, Dolly Marshall, and her family;

(e).  expenses for fire fighting and suppression;

(f).  expenses for the protection of the residence during repair.

45.   As of October 29, 2020,  Plaintiff, Dolly Marshall, has incurred, and Plaintiff, American Platinum, has paid to for or on behalf of Plaintiff, Dolly Marshall, damages for losses in categories (a) through (e) in paragraph 44, having a fair and reasonable market value in the amount of $208,359.96.

46.   Plaintiff, Dolly Marshall, may continue to incur damages in the aforesaid categories, and Plaintiff, American Platinum, continues to pay and is expected in the future to pay to, for or on behalf of Plaintiff, Dolly Marshall, additional losses and damages caused to Plaintiff, Dolly Marshall, in the aforesaid categories by the aforesaid fire that are covered under the Policy.

47.   Sections I and II – CONDITIONS, Part F of the Policy provides, in pertinent part, as follows:

**F.  SUBROGATION**

An "insured" may waive in writing before a loss all rights of recovery against any person.  If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

48.   On or about October 29, 2020, Plaintiff, Dolly Marshall, and Plaintiff, American Platinum, executed a Subrogation Receipt and Assignment Agreement, a true and correct copy of which is attached hereto as Exhibit "B" and incorporated herein by reference, wherein the parties agreed, *inter alia*, that Plaintiff, American Platinum has paid, and may in the future pay to, for or on behalf of Plaintiff, Dolly Marshall, certain damages or losses arising out of the Loss pursuant to the Policy, including the damages and losses set forth above (the "American Platinum Claims").   Plaintiff, Dolly Marshall, hereby assigns, sets over, transfers and subrogates to Plaintiff, American Platinum, all of those certain rights, claims, interests, or causes of action, pursuant to the terms of this Agreement against any person, persons, corporations, limited liability companies, partnerships or other type entities which may be liable or hereinafter adjudged liable for the loss or damages which

occurred to Plaintiff, Dolly Marshall, as a result of the Loss for the amount that Plaintiff,
American Platinum, has, or will in the future pay to, for or on behalf of Plaintiff, Dolly
Marshall, with the understanding that Plaintiff, Dolly Marshall, has the right of first
recovery in light of the "made whole" doctrine, subject to the terms and conditions set
forth herein.  Plaintiff, Dolly Marshall, hereby authorizes and/or empowers Plaintiff,
American Platinum, to sue on her behalf, pursuant to the terms of this Subrogation
Receipt and Assignment Agreement, and to such extent that the claims of American
Platinum exceed the individual claims of Plaintiff, Dolly Marshall's claims, her claims are
hereby assigned and transferred to Plaintiff, American Platinum, Plaintiff, American
Platinum is substituted in place of Plaintiff, Dolly Marshall, and subrogated to her rights to
the damages and losses  to amounts exceeding losses and damages of Plaintiff, Dolly
Marshall, which are not covered under the Policy.

49.   Plaintiff, American Platinum, as subrogee and assignee of Plaintiff, Dolly
Marshall, is entitled to recovery of the aforesaid losses and damages it has paid on
behalf of, to or for Plaintiff, Dolly Marshall, in the past and similar losses and damages it
may be on behalf of, to or for Plaintiff, Dolly Marshall, in the future under the causes of
actions set forth herein pursuant to the terms of the Subrogation Receipt and Assignment
Agreement attached hereto as Exhibit "B"; or in the alternative, Plaintiff, Dolly Marshall, is
entitled to recovery of said losses and damages from Defendants and Plaintiff, Dolly
Marshall, hereby assigns and subrogates all causes of action giving her a right to the
recovery and all damages to which Plaintiff, Dolly Marshall, would be entitled upon
recovery under said causes of action to American Platinum pursuant to the terms of the
Subrogation Receipt and Assignment Agreement attached hereto as Exhibit "B".

50.   Plaintiff, Dolly Marshall's damages to date are all covered by the Policy and have been either been paid to her, on behalf of or for her to others for all categories of damages set forth above by Plaintiff, American Platinum.

## COUNT I

## American Platinum Property and Casualty Insurance Company, as subrogee of

## Dolly Marshall, and Dolly Marshall v. HP, Inc.

### (NEGLIGENCE)

51.   Plaintiffs, American Platinum, as subrogee of Dolly Marshall, and Dolly Marshall, incorporate the preceding paragraphs by reference as if fully set forth at length herein.

52.  The carelessness, negligence, gross negligence, and recklessness of Defendant, HP, Inc., consisted of, *inter alia*, the following:

(a).  Designing, manufacturing, marketing, distributing, supplying, marketing, advertising, and/or selling said products in the defective and unreasonably dangerous conditions in design and manufacture when Defendant knew, or should have known, of the defective and unreasonable dangerous conditions;

(b).  Designing, manufacturing, marketing, distributing, supplying, advertising, and/or selling said products in the defective and unreasonably dangerous conditions in design and manufacture when Defendant would have discovered said condition upon reasonable inspection, testing and analysis and eliminated said defective and unreasonably dangerous conditions;

(c).  Designing, manufacturing, marketing, distributing, supplying, advertising, and/or selling said products, when Defendants knew, or should have known of the defective and unreasonable dangerous condition in design and manufacture thereof when Defendant did not incorporate the state of the art in science, engineering, and in similar product manufacturing industries, and safety requirements of regulations and statutes applicable to the products' design and manufacture;

(d).  Designing, manufacturing, advertising, marketing, distributing, advertising, supplying, and/or selling said products without adequate instructions when Defendant knew, or should have known that the lack of adequate instructions were defective and unreasonably dangerous conditions in design and manufacture;

14

(e).  Failing to warn or properly and adequately warn Dolly Marshall and others similarly situated of the defective and unreasonable dangerous conditions in design and manufacture of said products of which Defendant knew, or should have known;

(f).  Failing to instruct or properly and adequately instruct Dolly Marshall and others similarly situated in the safe use of said products;

(g).  Failing to inspect or properly and adequately inspect the said products for the presence of the defective and unreasonably dangerous conditions in design and manufacture;

(h).  Failing to design, manufacture, distribute, supply and/or sell said products in a safe condition that was safe and not defective and unreasonably dangerous in design and manufacture;

(i).  Failing to repair the defective and unreasonably dangerous conditions in design and manufacture of said products when Defendant knew, or should have known, of the defective and unreasonably dangerous conditions in design and manufacture;

(j).  Failing to timely and properly repair the defective and unreasonably dangerous conditions in design and manufacture of the products of which Defendant knew, or should have known;

(k).  Failing to recall the products when Defendant knew, or should have known, of the defective and unreasonably dangerous conditions in design and manufacture of the products;

(l).  Designing, manufacturing, distributing, supplying and/or selling the products with component parts that created or failed to eliminate the defective and unreasonably dangerous conditions in design and manufacture when Defendant knew, or should have known, of the dangers the component parts created or failed to eliminate;

(m)  Designing, manufacturing, distributing, supply and/or selling the products pursuant to design specifications that were inadequate and either created or failed to eliminate the defective and unreasonably dangerous conditions in design and manufacture when Defendant knew, or should have known, of the dangers created by the specifications;

(n).  Failing to enforce and follow external and internal design and manufacturing quality control standards, policies, procedures and practices relative to the subject products that were intended to ensure that the products were safe for their intended, reasonable and reasonably foreseeable uses;

(o).  Failing to develop internal and external design and manufacturing quality control standards, policies, procedures and practices relative to the products to ensure that the products were safe for their intended, reasonable and reasonably foreseeable uses;

(p).  Failing to perform proper and adequate hazard, safety, fault tree, risk/utility and other safety analyses upon the subject products, when the performance of said analyses would have uncovered the defective and unreasonably dangerous conditions in design and manufacture;

(q).   Improperly ignoring or disregarding the results of hazard, safety, fault tree, risk/utility and other safety analyses which identified the existence of the dangerous and unreasonably dangerous conditions in design and manufacture of the subject products.

53.  The carelessness, negligence, gross negligence, and recklessness of Defendant as aforesaid directly, proximately, substantially and legal caused Plaintiff, American Platinum, and Plaintiff, Dolly Marshall, to suffer the losses and damages set forth above.

WHEREFORE, Plaintiffs, American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall, demand judgment in their favor and against Defendant, HP, Inc., in excess of $208,359.96, plus any additional past damages and loss, and any future damages and losses Plaintiffs shall incur or pay that were caused by the fire, plus interest, delay damages and costs of suit.

## COUNT II

### American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall v. HP, Inc.

**(STRICT LIABILITY—DESIGN AND MANUFACTURING DEFECTS)**

54.  Plaintiffs, American Platinum, as subrogee of Dolly Marshall, and Dolly Marshall, incorporate by reference all preceding paragraphs of this Complaint as if fully set forth at length herein.

55.  The subject products were designed, manufactured, distributed, marketed, advertised, and/or sold by Defendant, HP, Inc. with the aforesaid defective conditions in design and manufacture and dangers to the intended, ordinary, reasonable or reasonably

foreseeable user or consumer while using the product in its intended, ordinarily, reasonable and reasonably foreseeable uses.

56. The subject products reached the user or consumer, Plaintiff, Dolly Marshall, without substantial change in the condition in which they were designed, manufactured, distributed, marketed, advertised, and/or sold by Defendant.

57. Defendant expected, intended and reasonably foresaw that said products, would reach the user or consumer, Plaintiff, Dolly Marshall, without substantial change in the condition in which they were designed, manufactured, distributed, marketed, advertised, and/or sold by Defendant and in which they left Defendant's possession or control.

58. The use of the products by Plaintiff, Dolly Marshall, and all others was, at all times, was intended, expected, reasonable and reasonably foreseeable to Defendant and in the manner intended by or reasonably foreseeable to Defendant.

59. At all times relevant hereto, the aforesaid defective conditions in design and manufacture and dangers of the products were unknowable and unacceptable to the average or ordinary consumer using the subject products in the intended, reasonable and reasonably foreseeable uses.

60. At all times relevant hereto, a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid defective conditions in design and manufacture and dangers of the products to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the products in their intended, reasonable and reasonably foreseeable use outweighed the burden or costs of

Defendant taking precautions to eliminate or substantially reduce the likelihood that said defective conditions in design and manufacture and dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the products in their intended, reasonable and reasonably foreseeable uses.

61.   Because the subject products were designed, manufactured, distributed and sold with the existence of the aforesaid defective conditions in design and manufacture and dangers which were unknowable and unacceptable to the average or ordinary consumer using the subject products in the intended, reasonable and reasonably foreseeable uses of the products, and a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid defective conditions in design and manufacture and dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the products in their intended, reasonable and reasonably foreseeable uses outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said defective conditions in design and manufacture and dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the products in their intended, reasonable and reasonably foreseeable uses, the subject products were designed, manufactured, distributed and sold in a defective condition in design and manufacture unreasonably dangerous to the intended, ordinary or reasonably foreseeable users, including but not limited to Plaintiff, Dolly Marshall, while using the products in their intended, reasonable and reasonably foreseeable uses.

62. The Defendant failed to provide proper and adequate warnings to Plaintiff, Dolly Marshall, and others similarly situated of the inherent and reasonably foreseeable dangers in the use of the subject products.

63. The Defendant failed to provide proper and adequate instructions to Plaintiff, Dolly Marshall, and others similarly situated in the safe and proper use of the subject products.

64. By failing to provide proper and adequate warnings and instructions to Plaintiff, Dolly Marshall, and others similarly situated, Defendant, designed, manufactured, marketed, distributed, supplied, advertised, and/or sold said products in a defective condition in design and manufacture unreasonably dangerous to the user or consumer, which in this case is Plaintiff, Dolly Marshall.

65. At all times relevant hereto, the existing, known or foreseeable defective conditions in design and manufacture and dangers as aforesaid posed by the subject products could have been reduced or avoided by Defendant by the adoption of a reasonable alternative design and the omission of said alternative design rendered said products defective in design and manufacture and unreasonably dangerous.

66. At all times relevant hereto, the foreseeable risks of harm posed by the subject products could have been reduced or avoided by the provision of reasonable instructions or warnings by Defendant, and the omission of the instructions or warnings rendered the subject products defective in design and manufacture and not reasonably safe.

67. The aforesaid products malfunctioned, were only given their normal or anticipated use and no reasonable secondary causes were responsible for the fire other than a defective in design and manufacture of the subject products.

68. The aforesaid fire occurred during the products' expected useful life or life span as intended and reasonably foreseen by Defendants and the generally accepted useful life or expected life span for the products.

69. If the products were properly designed and manufactures, said products would never catch or cause a fire during the intended or reasonably foreseeable use of the products throughout their expected useful life or life span.

70. Defendant is strictly liable to Plaintiffs, American Platinum and Dolly Marshall, pursuant to Restatement (Second) of Torts, Section 402(A) and the Pennsylvania Supreme Court decision of *Tincher v. Omega Flex*, 104 A.3d 328 (Pa. 2014), for designing, manufacturing, marketing, distributing, supplying, advertising, and/or selling said products in a defective condition in design and manufacture unreasonably dangerous to the user or consumer.

71. The losses and damages to Plaintiff, Dolly Marshall, and Plaintiff, American Platinum, as more fully set forth above, were directly, proximately, substantially, and legally caused by the defective condition in design and manufacture and unreasonably dangerous condition of the subject products.

WHEREFORE, Plaintiffs, American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall, demand judgment in their favor and against Defendant, HP, Inc., in excess of $208,359.96, plus any additional past

20

damages and loss, and any future damages and losses Plaintiffs shall incur or pay that were caused by the fire, plus interest, delay damages and costs of suit.

**COUNT III**

**American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall v. HP, Inc.**

**(BREACH OF WARRANTY)**

72.   Plaintiffs, American Platinum, as subrogee of Dolly Marshall, and Dolly Marshall, incorporate by reference all preceding paragraphs of this Complaint as if fully set forth at length herein.

73.   In connection with and as part of the design, manufacture, marketing, distribution, supply, advertising, and/or sale of said products, Defendant, HP, Inc., conveyed various guarantees and warranties, both express and implied, including but not limited to warranties to the effect that reasonable care was used in the manufacture and design of the products and that said products were safe and effective for their ordinary and intended use, fit for their intended purposes, adequately and properly designed, tested, installed and manufactured, not defective and not unreasonably dangerous for their intended, reasonable and reasonably foreseeable uses, and merchantable or of merchantable quality.

74.   Defendant breached said warranties, including but not limited to the express warranties, the warranties of merchantability and safety and fitness for use, in that said products were not of merchantable quality and were not safe or fit for their normal, intended, expected, reasonable or reasonably foreseeable uses and purposes.

75.   The aforesaid warranties were made for the benefit of, and are enforceable by Plaintiff, Dolly Marshall, and Plaintiff, American Platinum.

76.   Plaintiff, Dolly Marshall, reasonably relied on said warranties in using the products.

77.   Defendant's breach of said warranties was the direct, proximate, legal and substantial cause of the losses and damages to Plaintiff, Dolly Marshall, and Plaintiff, American Platinum.

WHEREFORE, Plaintiffs, American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall, demand judgment in their favor and against Defendant, HP, Inc., in excess of $208,359.96, plus any additional past damages and loss, and any future damages and losses Plaintiffs shall incur or pay that were caused by the fire, plus interest, delay damages and costs of suit.

## COUNT IV

## American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall v. Hewlett Packard Enterprise Company

### (NEGLIGENCE)

78.   Plaintiffs, American Platinum, as subrogee of Dolly Marshall, and Dolly Marshall, incorporate the preceding paragraphs by reference as if fully set forth at length herein.

79.   The carelessness, negligence, gross negligence, and recklessness of Defendant, Hewlett Packard Enterprise Company, consisted of, *inter alia*, the following:

(a).  Designing, manufacturing, marketing, distributing, supplying, marketing, advertising, and/or selling said products in the defective and unreasonably

dangerous conditions in design and manufacture when Defendant knew, or should have known, of the defective and unreasonable dangerous conditions;

(b).  Designing, manufacturing, marketing, distributing, supplying, advertising, and/or selling said products in the defective and unreasonably dangerous conditions in design and manufacture when Defendant would have discovered said condition upon reasonable inspection, testing and analysis and eliminated said defective and unreasonably dangerous conditions;

(c).  Designing, manufacturing, marketing, distributing, supplying, advertising, and/or selling said products, when Defendants knew, or should have known of the defective and unreasonable dangerous condition in design and manufacture thereof when Defendant did not incorporate the state of the art in science, engineering, and in similar product manufacturing industries, and safety requirements of regulations and statutes applicable to the products' design and manufacture;

(d).  Designing, manufacturing, advertising, marketing, distributing, advertising, supplying, and/or selling said products without adequate instructions when Defendant knew, or should have known that the lack of adequate instructions were defective and unreasonably dangerous conditions in design and manufacture;

(e).  Failing to warn or properly and adequately warn Dolly Marshall and others similarly situated of the defective and unreasonable dangerous conditions in design and manufacture of said products of which Defendant knew, or should have known;

(f).  Failing to instruct or properly and adequately instruct Dolly Marshall and others similarly situated in the safe use of said products;

(g).  Failing to inspect or properly and adequately inspect the said products for the presence of the defective and unreasonably dangerous conditions in design and manufacture;

(h).  Failing to design, manufacture, distribute, supply and/or sell said products in a safe condition that was safe and not defective and unreasonably dangerous in design and manufacture;

(i).  Failing to repair the defective and unreasonably dangerous conditions in design and manufacture of said products when Defendant knew, or should have known, of the defective and unreasonably dangerous conditions in design and manufacture;

(j).  Failing to timely and properly repair the defective and unreasonably dangerous conditions in design and manufacture of the products of which Defendant knew, or should have known;

(k).  Failing to recall the products when Defendant knew, or should have known, of the defective and unreasonably dangerous conditions in design and manufacture of the products;

(l).  Designing, manufacturing, distributing, supplying and/or selling the products with component parts that created or failed to eliminate the defective and unreasonably dangerous conditions in design and manufacture when Defendant

knew, or should have known, of the dangers the component parts created or failed to eliminate;

(m)  Designing, manufacturing, distributing, supply and/or selling the products pursuant to design specifications that were inadequate and either created or failed to eliminate the defective and unreasonably dangerous conditions in design and manufacture when Defendant knew, or should have known, of the dangers created by the specifications;

(n).  Failing to enforce and follow external and internal design and manufacturing quality control standards, policies, procedures and practices relative to the subject products that were intended to ensure that the products were safe for their intended, reasonable and reasonably foreseeable uses;

(o).   Failing to develop internal and external design and manufacturing quality control standards, policies, procedures and practices relative to the products to ensure that the products were safe for their intended, reasonable and reasonably foreseeable uses;

(p).  Failing to perform proper and adequate hazard, safety, fault tree, risk/utility and other safety analyses upon the subject products, when the performance of said analyses would have uncovered the defective and unreasonably dangerous conditions in design and manufacture;

(q).   Improperly ignoring or disregarding the results of hazard, safety, fault tree, risk/utility and other safety analyses which identified the existence of the dangerous and unreasonably dangerous conditions in design and manufacture of the subject products.

80. The carelessness, negligence, gross negligence, and recklessness of Defendant as aforesaid directly, proximately, substantially and legal caused Plaintiff, American Platinum, and Plaintiff, Dolly Marshall, to suffer the losses and damages set forth above.

WHEREFORE, Plaintiffs, American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall, demand judgment in their favor and against Defendant, Hewlett Packard Enterprise Company, in excess of $208,359.96, plus any additional past damages and loss, and any future damages and losses Plaintiffs shall incur or pay that were caused by the fire, plus interest, delay damages and costs of suit.

24

## COUNT V

## American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall v. Hewlett Packard Enterprise Company

### (STRICT LIABILITY—DESIGN AND MANUFACTURING DEFECTS)

81.  Plaintiffs, American Platinum, as subrogee of Dolly Marshall, and Dolly Marshall, incorporate by reference all preceding paragraphs of this Complaint as if fully set forth at length herein.

82.  The subject products were designed, manufactured, distributed, marketed, advertised, and/or sold by Defendant, Hewlett Packard Enterprise Company, with the aforesaid defective conditions in design and manufacture and dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer while using the product in its intended, ordinarily, reasonable and reasonably foreseeable uses.

83.  The subject products reached the user or consumer, Plaintiff, Dolly Marshall, without substantial change in the condition in which they were designed, manufactured, distributed, marketed, advertised, and/or sold by Defendant.

84.   Defendant expected, intended and reasonably foresaw that said products, would reach the user or consumer, Plaintiff, Dolly Marshall, without substantial change in the condition in which they were designed, manufactured, distributed, marketed, advertised, and/or sold by Defendant and in which they left Defendant's possession or control.

85.  The use of the products by Plaintiff, Dolly Marshall, and all others was, at all times, was intended, expected, reasonable and reasonably foreseeable to Defendant and in the manner intended by or reasonably foreseeable to Defendant.

25

86.   At all times relevant hereto, the aforesaid defective conditions in design and manufacture and dangers of the products were unknowable and unacceptable to the average or ordinary consumer using the subject products in the intended, reasonable and reasonably foreseeable uses.

87.   At all times relevant hereto, a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid defective conditions in design and manufacture and dangers of the products to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the products in their intended, reasonable and reasonably foreseeable use outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said defective conditions in design and manufacture and dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the products in their intended, reasonable and reasonably foreseeable uses.

88.   Because the subject products were designed, manufactured, distributed and sold with the existence of the aforesaid defective conditions in design and manufacture and dangers which were unknowable and unacceptable to the average or ordinary consumer using the subject products in the intended, reasonable and reasonably foreseeable uses of the products, and a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid defective conditions in design and manufacture and dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the products in their intended, reasonable and reasonably foreseeable uses outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said defective

conditions in design and manufacture and dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the products in their intended, reasonable and reasonably foreseeable uses, the subject products were designed, manufactured, distributed and sold in a defective condition in design and manufacture unreasonably dangerous to the intended, ordinary or reasonably foreseeable users, including but not limited to Plaintiff, Dolly Marshall, while using the products in their intended, reasonable and reasonably foreseeable uses.

89.   The Defendant failed to provide proper and adequate warnings to Plaintiff, Dolly Marshall, and others similarly situated of the inherent and reasonably foreseeable dangers in the use of the subject products.

90.   The Defendant failed to provide proper and adequate instructions to Plaintiff, Dolly Marshall, and others similarly situated in the safe and proper use of the subject products.

91.   By failing to provide proper and adequate warnings and instructions to Plaintiff, Dolly Marshall, and others similarly situated, Defendant, designed, manufactured, marketed, distributed, supplied, advertised, and/or sold said products in a defective condition in design and manufacture unreasonably dangerous to the user or consumer, which in this case is Plaintiff, Dolly Marshall.

92.   At all times relevant hereto, the existing, known or foreseeable defective conditions in design and manufacture and dangers as aforesaid posed by the subject products could have been reduced or avoided by Defendant by the adoption of a reasonable alternative design and the omission of said alternative

design rendered said products defective in design and manufacture and unreasonably dangerous.

93.   At all times relevant hereto, the foreseeable risks of harm posed by the subject products could have been reduced or avoided by the provision of reasonable instructions or warnings by Defendant, and the omission of the instructions or warnings rendered the subject products defective in design and manufacture and not reasonably safe.

94.   The aforesaid products malfunctioned, were only given their normal or anticipated use and no reasonable secondary causes were responsible for the fire other than a defective in design and manufacture of the subject products.

95.   The aforesaid fire occurred during the products' expected useful life or life span as intended and reasonably foreseen by Defendants and the generally accepted useful life or expected life span for the products.

96.   If the products were properly designed and manufactures, said products would never catch or cause a fire during the intended or reasonably foreseeable use of the products throughout their expected useful life or life span.

97.   Defendant is strictly liable to Plaintiffs, American Platinum and Dolly Marshall, pursuant to Restatement (Second) of Torts, Section 402(A) and the Pennsylvania Supreme Court decision of *Tincher v. Omega Flex*, 104 A.3d 328 (Pa. 2014), for designing, manufacturing, marketing, distributing, supplying, advertising, and/or selling said products in a defective condition in design and manufacture unreasonably dangerous to the user or consumer.

98.   The losses and damages to Plaintiff, Dolly Marshall, and Plaintiff, American Platinum, as more fully set forth above, were directly, proximately, substantially, and legally caused by the defective condition in design and manufacture and unreasonably dangerous condition of the subject products.

WHEREFORE, Plaintiffs, American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall, demand judgment in their favor and against Defendant, Hewlett Packard Enterprise Company, in excess of $208,359.96, plus any additional past damages and loss, and any future damages and losses Plaintiff shall incur or pay that were caused by the fire, plus interest, delay damages and costs of suit.

## COUNT VI

## American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall v. Hewlett Packard Enterprise Company

## (BREACH OF WARRANTY)

99.   Plaintiffs, American Platinum, as subrogee of Dolly Marshall, and Dolly Marshall, incorporate by reference all preceding paragraphs of this Complaint as if fully set forth at length herein.

100.    In connection with and as part of the design, manufacture, marketing, distribution, supply, advertising, and/or sale of said products, Defendant, Hewlett Packard Enterprise Company, conveyed various guarantees and warranties, both express and implied, including but not limited to warranties to the effect that reasonable care was used in the manufacture and design of the products and that said products were safe and effective for their ordinary and intended use, fit for their intended purposes, adequately

29

and properly designed, tested, installed and manufactured, not defective and not unreasonably dangerous for their intended, reasonable and reasonably foreseeable uses, and merchantable or of merchantable quality.

101.   Defendant breached said warranties, including but not limited to the express warranties, the warranties of merchantability and safety and fitness for use, in that said products were not of merchantable quality and were not safe or fit for their normal, intended, expected, reasonable or reasonably foreseeable uses and purposes.

102.   The aforesaid warranties were made for the benefit of, and are enforceable by Plaintiff, Dolly Marshall, and Plaintiff, American Platinum.

103.   Plaintiff, Dolly Marshall, reasonably relied on said warranties in using the product.

104.   Defendant's breach of said warranties was the direct, proximate, legal and substantial cause of the losses and damages to Plaintiff, Dolly Marshall, and Plaintiff, American Platinum.

WHEREFORE, Plaintiffs, American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall, demand judgment in their favor and against Defendant, Hewlett Packard Enterprise Company, in excess of $208,359.96, plus any additional past damages and loss, and any future damages and losses Plaintiffs shall incur or pay that were caused by the fire, plus interest, delay damages and costs of suit.

## COUNT VII

## American Platinum Property and Casualty Insurance Company, as subrogee of

## Dolly Marshall, and Dolly Marshall v. Amazon.com, Inc.

### (NEGLIGENCE)

105.   Plaintiffs, American Platinum, as subrogee of Dolly Marshall, and Dolly

Marshall, incorporate the preceding paragraphs by reference as if fully set forth at length

herein.

106.   The carelessness, negligence, gross negligence, and recklessness of

Defendant, Amazon.com, Inc., consisted of, *inter alia*, the following:

(a).  Advertising, distributing, supplying, marketing, and/or selling said laptop product in the defective and unreasonably dangerous conditions in design and manufacture when Defendant knew, or should have known, of the defective and unreasonable dangerous conditions;

(b).  Marketing, distributing, supplying, advertising, and/or selling said product in the defective and unreasonably dangerous conditions in design and manufacture when Defendant would have discovered said condition upon reasonable inspection, testing and analysis and eliminated said defective and unreasonably dangerous conditions;

(c).  Marketing, distributing, supplying, advertising, and/or selling said product, when Defendants knew, or should have known of the defective and unreasonable dangerous condition in design and manufacture thereof when Defendant did not incorporate the state of the art in science, engineering, and in similar product manufacturing industries, and safety requirements of regulations and statutes applicable to the product's design and manufacture;

(d).  Marketing, distributing, advertising, supplying, and/or selling said product without adequate instructions when Defendant knew, or should have known that the lack of adequate instructions were defective and unreasonably dangerous conditions in design and manufacture;

(e).  Failing to warn or properly and adequately warn Dolly Marshall and others similarly situated of the defective and unreasonable dangerous conditions in design and manufacture of said product of which Defendant knew, or should have known;

(f).  Failing to instruct or properly and adequately instruct Dolly Marshall and others similarly situated in the safe use of said product;

(g).  Failing to inspect or properly and adequately inspect the said product for the presence of the defective and unreasonably dangerous conditions in design and manufacture;

(h).  Failing to distribute, market, advertise, supply and/or sell said product in a safe condition that was safe and not defective and unreasonably dangerous in design and manufacture;

(i).  Failing to repair the defective and unreasonably dangerous conditions in design and manufacture of said product when Defendant knew, or should have known, of the defective and unreasonably dangerous conditions in design and manufacture;

(j).  Failing to timely and properly repair the defective and unreasonably dangerous conditions in design and manufacture of the product of which Defendant knew, or should have known;

(k).  Failing to recall the product when Defendant knew, or should have known, of the defective and unreasonably dangerous conditions in design and manufacture of the product;

(l).   Marketing, advertising, distributing, supplying and/or selling the product with component parts that created or failed to eliminate the defective and unreasonably dangerous conditions in design and manufacture when Defendant knew, or should have known, of the dangers the component parts created or failed to eliminate;

(m)   Marketing, advertising, distributing, supplying and/or selling the product pursuant to design specifications that were inadequate and either created or failed to eliminate the defective and unreasonably dangerous conditions in design and manufacture when Defendant knew, or should have known, of the dangers created by the specifications;

(n).  Failing to enforce and follow external and internal design, manufacturing, marketing, advertising, distribution, supply or sales quality control standards, policies, procedures and practices relative to the subject products that were intended to ensure that the product was safe for their intended, reasonable and reasonably foreseeable uses;

(o).   Failing to develop internal and external design, manufacturing, marketing, advertising, distribution, supply or sales quality control standards, policies, procedures and practices relative to the product to ensure that the products were safe for their intended, reasonable and reasonably foreseeable uses;

(p).  Failing to perform proper and adequate hazard, safety, fault tree, risk/utility and other safety analyses upon the subject product, when the performance of said analyses would have uncovered the defective and unreasonably dangerous conditions in design and manufacture;

(q).   Improperly ignoring or disregarding the results of hazard, safety, fault tree, risk/utility and other safety analyses which identified the existence of the dangerous and unreasonably dangerous conditions in design and manufacture of the subject product.

107.   The carelessness, negligence, gross negligence, and recklessness of Defendant as aforesaid directly, proximately, substantially and legal caused Plaintiff, American Platinum, and Plaintiff, Dolly Marshall, to suffer the losses and damages set forth above.

WHEREFORE, Plaintiffs, American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall, demand judgment in their favor and against Defendant, Amazon.com, Inc., in excess of $208,359.96, plus any additional past damages and loss, and any future damages and losses Plaintiff shall incur or pay that were caused by the fire, plus interest, delay damages and costs of suit.


## COUNT VIII

## American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall v. Amazon.com, Inc.

### (STRICT LIABILITY—DESIGN AND MANUFACTURING DEFECTS)

108.   Plaintiffs, American Platinum, as subrogee of Dolly Marshall, and Dolly Marshall, incorporate by reference all preceding paragraphs of this Complaint as if fully set forth at length herein.

109.   The subject replacement battery was marketed, advertised, distributed, supplied and/or sold by Defendant, Amazon.com, Inc., with the aforesaid defective conditions in design and manufacture and dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer while using the product in its intended, ordinarily, reasonable and reasonably foreseeable uses.

110.   The subject product reached the user or consumer, Plaintiff, Dolly Marshall, without substantial change in the condition in which it was distributed, marketed, advertised, and/or sold by Defendant.

111.   Defendant expected, intended and reasonably foresaw that said product, would reach the user or consumer, Plaintiff, Dolly Marshall, without substantial change in the condition in which it was manufactured, designed, distributed, marketed, advertised, and/or sold and in which they left Defendant's possession or control.

112.   The use of the product by Plaintiff, Dolly Marshall, and all others was, at all times, was intended, expected, reasonable and reasonably foreseeable to Defendant and in the manner intended by or reasonably foreseeable to Defendant.

113.   At all times relevant hereto, the aforesaid defective conditions in design and manufacture and dangers of the product were unknowable and unacceptable to the average or ordinary consumer using the subject product in the intended, reasonable and reasonably foreseeable uses.

114.   At all times relevant hereto, a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid defective conditions in design and manufacture and dangers of the product to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the product in its intended, reasonable and reasonably foreseeable use outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said defective conditions in design and manufacture and dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the product in its intended, reasonable and reasonably foreseeable uses.

115.   Because the subject product was designed, manufactured, distributed and sold with the existence of the aforesaid defective conditions in design and manufacture and dangers which were unknowable and unacceptable to the average or ordinary consumer using the subject product in the intended, reasonable and reasonably foreseeable uses of the product, and a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid defective conditions in design and manufacture and dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the product in its intended, reasonable and reasonably foreseeable uses outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said defective conditions in design and manufacture and dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the product in its intended, reasonable and reasonably foreseeable uses, the subject product was designed, manufactured, distributed and sold in a defective condition in design and manufacture unreasonably dangerous to the intended, ordinary or reasonably foreseeable users, including but not limited to Plaintiff, Dolly Marshall, while using the product in its intended, reasonable and reasonably foreseeable uses.

116.   The Defendant failed to provide proper and adequate warnings to Plaintiff, Dolly Marshall, and others similarly situated of the inherent and reasonably foreseeable dangers in the use of the subject product.

117.   The Defendant failed to provide proper and adequate instructions to Plaintiff, Dolly Marshall, and others similarly situated in the safe and proper use of the subject product.

118.   By failing to provide proper and adequate warnings and instructions to Plaintiff, Dolly Marshall, and others similarly situated, Defendant marketed, distributed, supplied, advertised, and/or sold said product in a defective condition in design and manufacture unreasonably dangerous to the user or consumer, which in this case is Plaintiff, Dolly Marshall.

119.   At all times relevant hereto, the existing, known or foreseeable defective conditions in design and manufacture and dangers as aforesaid posed by the subject product could have been reduced or avoided by Defendant by the adoption of a reasonable alternative design and the omission of said alternative design rendered said products defective in design and manufacture and unreasonably dangerous.

120.   At all times relevant hereto, the foreseeable risks of harm posed by the subject product could have been reduced or avoided by the provision of reasonable instructions or warnings by Defendant, and the omission of the instructions or warnings rendered the subject product defective in design and manufacture and not reasonably safe.

121.   The aforesaid product malfunctioned, was only given its normal or anticipated use and no reasonable secondary causes were responsible for the fire other than a defective in design and manufacture of the subject products.

122.   The aforesaid fire occurred during the product's expected useful life or life span as intended and reasonably foreseen by Defendant and the generally accepted useful life or expected life span for the products.

123.   If the product was properly designed and manufactures, said product would never catch or cause a fire during the intended or reasonably foreseeable use of the product throughout its expected useful life or life span.

124.   Defendant is strictly liable to Plaintiffs, American Platinum and Dolly Marshall, pursuant to Restatement (Second) of Torts, Section 402(A) and the Pennsylvania Supreme Court decision of *Tincher v. Omega Flex*, 104 A.3d 328 (Pa. 2014), for marketing, distributing, supplying, advertising, and/or selling said product in a defective condition in design and manufacture unreasonably dangerous to the user or consumer.

125.   The losses and damages to Plaintiff, Dolly Marshall, and Plaintiff, American Platinum, as more fully set forth above, were directly, proximately, substantially, and legally caused by the defective condition in design and manufacture and unreasonably dangerous condition of the subject product.

WHEREFORE, Plaintiffs, American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall, demand judgment in their favor and against Defendant, Amazon.com, Inc., in excess of $208,359.96, plus any additional past damages and loss, and any future damages and losses Plaintiffs shall incur or pay that were caused by the fire, plus interest, delay damages and costs of suit.

## COUNT IX

## American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall v. Amazon.com, Inc.

### (BREACH OF WARRANTY)

126.  Plaintiffs, American Platinum, as subrogee of Dolly Marshall, and Dolly Marshall, incorporate by reference all preceding paragraphs of this Complaint as if fully set forth at length herein.

127.  In connection with and as part of the marketing, distribution, supply, advertising, and/or sale of said product, Defendant, Amazon.com, Inc., conveyed various guarantees and warranties, both express and implied, including but not limited to warranties to the effect that reasonable care was used in the manufacture and design of the product and that said product was safe and effective for its ordinary and intended use, fit for its intended purposes, adequately and properly designed, tested, installed and manufactured, not defective and not unreasonably dangerous for its intended, reasonable and reasonably foreseeable uses, and merchantable or of merchantable quality.

128.  Defendant breached said warranties, including but not limited to the express warranties, the warranties of merchantability and safety and fitness for use, in that said product was not of merchantable quality and was not safe or fit for its normal, intended, expected, reasonable or reasonably foreseeable uses and purposes.

129.  The aforesaid warranties were made for the benefit of, and are enforceable by Plaintiff, Dolly Marshall, and Plaintiff, American Platinum.

130.  Plaintiff, Dolly Marshall, reasonably relied on said warranties in using the product.

131.   Defendant's breach of said warranties was the direct, proximate, legal and substantial cause of the losses and damages to Plaintiff, Dolly Marshall, and Plaintiff, American Platinum.

WHEREFORE, Plaintiffs, American Platinum Property and Casualty Insurance Company, as subrogee of Dolly Marshall, and Dolly Marshall, demand judgment in their favor and against Defendant, Amazon.com, Inc., in excess of $208,359.96, plus any additional past damages and loss, and any future damages and losses Plaintiffs shall incur or pay that were caused by the fire, plus interest, delay damages and costs of suit.

COHEN, FEELEY, ALTEMOSE & RAMBO, P.C.

BY:   s/ Mark K. Altemose
          Mark K. Altemose, Esquire
          2851 Baglyos Circle
          Bethlehem, PA  18020
          (610) 625-2100
          maltemose@cohenfeeley.com
          ATTORNEYS FOR PLAINTIFF,
          AMERICAN PLATINUM PROPERTY AND
          CASUALTY INSURANCE COMPANY,
          as Subrogee of DOLLY MARSHALL

DOLLY MARSHALL, PRO SE
Dollsie33@hotmail.com